# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENZEL JOHNSON, SR.,    ,      )
                           )
      Petitioner,          )      Civil Action No. 23-881
                           )
      v.               )      Magistrate Judge Maureen P. Kelly
                           )
SUPERINTENDENT OF      )      Re: ECF Nos. 26 and 28
SCI HUNTINGDON; *and*    )
DISTRICT ATTORNEY OF   )
ALLEGHENY COUNTY,     )
                           )
      Respondents.     )

## <u>MEMORANDUM OPINION</u>

For the reasons that follow, Respondents' renewed Motion to Dismiss Petition for Writ of Habeas Corpus, filed on February 15, 2024, (the "Renewed Motion"), ECF No. 28, will be granted. Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed on January 26, 2024 (the "Second Amended Petition") will be dismissed, and a certificate of appealability will be denied.[1]

Denzel Johnson, Sr. ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). He initiated this matter with the submission of an untitled document on May 22, 2023, in which he complained of his conviction in the Court of Common Pleas of Allegheny County, Pennsylvania (the "Initial Petition").[2] ECF

---

[1] Petitioner and Respondents consented to the jurisdiction of a United States Magistrate Judge on August 28, 2023. ECF Nos. 8 and 12.

[2] Pursuant to the prisoner mailbox rule, the instant federal habeas action is deemed to have been initiated on May 22, 2023. ECF No. 1 at 1. See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) ("we hold that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.").

No. 1.  This filing was interpreted as a federal habeas petition, and Petitioner was ordered to file an amended petition on this Court's approved form.  ECF No. 2 at 2.

The First Amended Petition was filed on July 5, 2023.  ECF No. 3.  Respondents were served, and filed an initial Motion to Dismiss on September 14, 2023.  ECF No. 14.

Petitioner responded in opposition to the initial Motion to Dismiss on October 2 and 11, 2023.  ECF Nos. 18 and 20.  However, on January 23, 2024, Petitioner submitted a proposed amended habeas petition.  ECF No. 24.  This Court construed this filing as including an implicit motion for leave to file an amended petition, and granted leave on January 24, 2024.  ECF No. 25.  The operative Second Amended Petition was filed formally the same day.  ECF No. 26.

In light of the filing of the Second Amended Petition, the initial Motion to Dismiss was denied as moot.  ECF No. 27.  On February 15, 2024, Respondents filed the instant Renewed Motion.  ECF No. 28.

On the same date, Petitioner submitted a brief in support of the Second Amended Petition (the "Brief").  ECF No. 30.  Respondents filed a Supplement to their Renewed Motion in order to address Petitioner's Brief.  ECF No. 36.  Petitioner filed a Response to the Renewed Motion on July 16, 2024.  ECF No. 40.

The Renewed Motion is ripe for consideration.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the Second Amended Petition, Petitioner attacks his conviction of one count of Rape of a Child, in violation of 18 Pa. C.S.A. § 3121(c), in the Court of Common Pleas of Allegheny County.  ECF No. 26 at 2.  See also Docket, Com. v. Johnson, No. CP-02-CR-53-2016 (C.C.P. Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumb

er=CP-02-CR-0000053-2016&dnh=%2BZmhnxKAAXkgWGLWXsQLBg%3D%3D (last visited Aug. 5, 2024)).

The state court record indicates that Petitioner initially was charged by Criminal Information on or about February 22, 2016, with a litany of sex crimes, including Rape of a Child; Involuntary Deviate Sexual Intercourse with a Child; Aggravated Indecent Assault; Unlawful Contact with a Minor, Indecent Assault Involving a Person Less than 13 Years of Age; Endangering the Welfare of Children; and Corruption of Minors . ECF No. 28-2 at 1-6.

On September 8, 2016, Petitioner pleaded guilty to a single court from the Criminal Information – Rape of a Child. ECF No. 28-3 at 9. The prosecution withdrew the remaining charges. ECF No. 28-2 at 2. Petitioner was sentenced on the same date to a term of imprisonment of 10 to 20 years, with 20 years of probation to be served concurrently. ECF No. 28-4 at 1.

During Petitioner's plea hearing, the prosecution summarized the facts that they would have presented had the case gone to trial as follows.

> If this were to go to trial, the Commonwealth would present evidence that between January 1 of 2013 and December of 2015, the defendant lived with Ericka Blakey. They were both adults over the age of 18. They had a romantic relationship together and had one child together, a son about two years old.
>
> Ericka's daughter, the victim, Danielle Blakey, who was between seven and eight years old at the time, lived for a short period with the defendant and her mother and eventually moved in with her grandmother Paulette Blakey.
>
> While she was living with Paulette during this time, she would spend many weekends or almost every weekend with the defendant and her mother, Ericka. Danielle would testify that during this time, almost every time she was alone with the defendant, the defendant had sex with her. She would describe that the defendant put his penis in her mouth multiple times. Sometimes there would be occasions where stuff would come out of his penis into her mouth. It would taste nasty and he would make her spit this out.

3

On some occasions he had sex with her by putting or trying to put his penis into her butt. She would describe this as going between her butt cheeks and describes that it went in her butt hard and that it hurt. She described that during some of these encounters she was face down and would cry, but the defendant would not stop even if she was crying. She also described at times she could see the defendant smiling during these encounters.

She would testify that the defendant at times asked her to touch his penis. And that the defendant at least on one occasion gave her a small amount of money.

We would also have testimony from Paulette Blakey, who would testify that she lived with the victim during this time period and that at times, the victim would complain of issues with her butt. In particular, that she was bleeding on one occasion. But did not understand what the cause of the bleeding was at the time.

Eventually, Paulette would testify that she did receive two handwritten notes that were written by Danielle. The first note I will enter as Commonwealth's Exhibit 1. A copy has been provided to defense counsel. The victim wrote, Denzel has been having sex with me. He puts it in my butt, mouth, but it's spelled m o t h and tits. She wrote, this is not a good thing for an eight-year old child. Now I have to get my body checked.

And then another note from the same time period of December of 2015. The victim wrote, Denzel would put it in my mouth, butt and privates. He wouldn't listen when I said it hurt. Denzel would tell me not to tell anyone. Denzel would ask me if I told anyone. Denzel has been doing this for a long time. Denzel has been lying to my mom about it. Denzel was paying me. Denzel has been telling me inappropriate stuff I should not know. Denzel is a man who has a problem. I would enter those a Commonwealth's Exhibits 1 and 2.

Paulette Blakey reported it to the police. It was investigated. And we are here today with this. And with that, the Commonwealth rests.

Plea and Sentencing Hr'g Tr. dated Sept. 8, 2016, at 4-7.[3]

Prior to pleading guilty, Petitioner completed an eleven-page written guilty plea colloquy in the presence of his attorney. See Guilty Plea Explanation of Defendant's Rights. At the plea

---

[3] Citations to record that do not include reference to the electronic docket in this case relate to documents that are available only in the paper record currently before this Court.

hearing, Petitioner explicitly admitted his guilt, and acknowledged completing the written colloquy.

> THE COURT:  Mr. Johnson, you are pleading guilty.  Are you Pleading guilty because you are guilty?
>
> MR. JOHNSON:  Yes, ma'am.
>
> THE COURT:   You filled out the Guilty Plea Explanation of Defendant's Rights.  Did you read, understand, and answer all the questions?
>
> MR. JOHNSON:  Yes.
>
> THE COURT:  Did you do so while your attorney was available?
>
> MR. JOHNSON:  Yes, ma'am.

Plea and Sentencing Hr'g Tr. dated Sept. 8, 2016, at 7.

The record does not indicate that Petitioner filed post-sentence motions or a direct appeal with the Pennsylvania Superior Court.   Accordingly, his conviction became final on October 11, 2016 – the first working day thirty days after his guilty plea and sentencing. Pa. R.A.P. 903; 1 Pa. C.S.A. § 1908.

On June 28, 2017, Petitioner filed *pro se* his first petition for post-conviction collateral relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, *et seq.*[4]   Docket, <u>Johnson</u>, No. CP-02-CR-53-2016.   Petitioner was appointed counsel on July 7, 2017.  <u>Id.</u>  However, on September 18, 2017, Petitioner's counsel submitted a no-merit letter and moved to withdraw.  ECF No. 28-5 at 1-10.  The PCRA trial court granted leave to withdraw and issued notice of its intent to dismiss the first PCRA petition on September 19, 2017. ECF No. 28-6 at 1.  Petitioner did not respond to the notice, and the PCRA trial court dismissed

---

[4] Respondents did not include the *pro se* first PCRA petition with the state court record, indicating that they were unable to locate a copy.  ECF No. 28 at 2 n.11.

the first PCRA petition on October 13, 2017.  ECF No. 28-7 at 1.  The order dismissing the first

PCRA petition included language advising Petitioner that he had 30 days to appeal.  Id.  The record

does not indicate that Petitioner appealed the dismissal of this PCRA petition.

Petitioner filed a second PCRA petition on June 22, 2021.  ECF No. 28-9 at 1.  The

prosecution answered on July 23, 2021.  ECF No. 23-10 at 1 and 12.  The PCRA trial court issued

notice of its intent to dismiss the second PCRA petition on August 9, 2021, on the basis that it was

untimely.  ECF No. 28-11 at 1 and 3.  The second PCRA petition was dismissed on

September 1, 2021.  ECF No. 28-12.  The record does not indicate that Petitioner appealed.

Petitioner filed a third PCRA petition on November 3, 2022.  ECF No. 28-13 at 1.  The

PCRA trial court issued notice of its intent to dismiss the third PCRA petition without a hearing

as untimely on June 16, 2023.  ECF No. 28-14 at 1 and 5.  The PCRA trial court denied the third

PCRA Petition on July 20, 2023.  The record does not indicate that Petitioner appealed.

## II.     FEDERAL HABEAS CLAIMS

In the Second Amended Petition, Petitioner raises four grounds for federal habeas relief.

GROUND ONE:        DNA: My DNA was not found [or warranted] in, around or at all.

(a) Supporting facts[:]

There was not any of my DNA found in nor on the girl [Be it vaginal, oral or anal, clothing,
hair, etc…].

In a rape case of any kind where a wittness [sic]/accusing says that there was DNA [seman,
body fluid, ect [sic]…] in, on or around him/her a [sic] investigation needs to happen and
a warrant for said DNA (if found) has to be given to compare.

There is no DNA evidence of any kind and this alone should get thrown out.

GROUND TWO:        Dudiligence [sic] of the court and Police Department

(a) Supporting facts[:]

The Courts & Police Department did not Launch [*sic*] a proper investigation on The so call [*sic*] crimes, The accusing [*sic*] told the courts and Police Department where, when how and how many times the said crime happen [*sic*] yet there was no investigation (ie. forensics, etc…) Done [*sic*] to prove without a reason of dout [*sic*] that I commited [*sic*] a crime at all.  Forensic should of been Done [*sic*] at the home where the crime happened, where if the crime truely [*sic*] happen [*sic*] the way the accusser [*sic*] discribed [*sic*] the Department would of [*sic*] found blood; semen; pubic hair; etc…, yet the courts went off the "<u>hearsay</u>" instead of doing a proper investigation (Their Dodiligence [*sic*]), placing an innocent man in prison.

The accusing [*sic*] said I did said crime then used one dated 01/01/13 if the court had did there [*sic*] due diligence they would of [*sic*] seen that the child was not at the apartment and Ericka & Paulette Blakey text each other this [illegible] where Paulette refused to bring Danielle Blakey over cause she had plans, she didn't come over 'til 1/2/13 where the two sayed [*sic*] for an half an hr [*sic*].

GROUND THREE:   Details of accusing (Daniell / Paulett Blakey) not matching the evidence.

(a) Supporting facts[:]

The Rape kit of Danielle Blakey says that no multiple rape of any kind described the way of the accusing happened.  The accuser Danielle Blakey said that I forcibly raped her on multiple occasions [*sic*] in her vagina, mouth and anus, on the couch of Ericka Blakey's (which was still inside the apartment) visiously [*sic*] hard, non stop, and continued to say that I ejaculated inside her mouth then she spit it out [her saliva and my semen would of [*sic*] been at scene).  Physical evidence (ripes [*sic*], tears, stretching of the vaginal and anal walls) would of shown [*sic*], [illegible] only that scientifically bones would of [*sic*] been broke and scratches/bruises would of [*sic*] been seen.

Paulette Blakey said she had underware [*sic*] of Danielle's with semon like substance inside, if this was true a DNA annalisus [*sic*] would of [*sic*] convicted me alone if I did the crime.  If the courts did their due diligence this would  of [*sic*] proved me innocent.

GROUND FOUR:     Rape kit negative.

(a) Supporting facts[:]

The rape kit came back negative of any sexual activity which alone controdicts [*sic*] the hearsay testimony of the accussing [*sic*] party.  The accussing [*sic*] says that I forcefully [raped her,] which would of [*sic*] caused tearing, bruising, stretching, bleeding, (etc…) which none of this was found inside her vigina, anus nor throat.  I said actions discribe [*sic*] happened the ways and times described the rape kit would of [*sic*] provided the evidence

of this crime which was said happened from the age of 3-8 (2010-2015) "since we first met". The accusings [*sic*] [would have been injured severely].[5]

ECF No. 26 at 5, 7, 8, and 10.[6]

## III.    LEGAL ANALYSIS

### A.    The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to Section 2254.  The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[5] Bracketed language has been used in Ground Four to summarize graphic details alleged by Petitioner.

[6] In his supporting Brief, Petitioner also asserts that he suffered from ineffective assistance of trial counsel, as well as unfair interference with witnesses by the trial judge at hearings prior to his guilty plea.  See, generally, ECF No. 30.  To the extent that Petitioner attempts to assert additional claims for federal habeas relief based on these allegations, the same are not properly before this Court because they were not raised in the Second Amended Petition.  R. Gov. Section 2254 Cases 2(c); see also LCvR 2254.B.2.b.  Be that as it may, a review of the Brief indicates that any claims arising from these allegations would have accrued on the same date as the claims that were properly presented in the Second Amended Petition, and are untimely for the same reasons.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date on which the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).

**B.      The Second Amended Petition is Untimely.**

Each of the four grounds for relief generally appear to relate to the sufficiency of the evidence that Petitioner committed the crime to which he pleaded guilty.  None of the grounds appear to be based on newly-discovered evidence.  Accordingly, all grounds for relief trigger under Section 2244(d)(1)(A) on the date on which Petitioner's conviction became final.  As stated above, that date is October 11, 2016.

However, the statute of limitations was tolled by the filing of Petitioner's first PCRA petition on June 28, 2017.  Docket, <u>Johnson</u>, No. CP-02-CR-53-2016.  The first PCRA petition was dismissed on October 13, 2017.  ECF No. 28-7 at 1.  Petitioner did not appeal from that dismissal.  Accordingly, the statute of limitations began to run again, at the latest, on November 13, 2017, when the period of time for Petitioner to file an appeal with the Pennsylvania Superior Court lapsed.  Pa. R.A.P. Rule 903(a) and 1 Pa. C.S.A. § 1908.

Petitioner subsequently filed two additional PCRA petitions.  ECF No. 28-8 at 1 and ECF No. 28-13 at 1.  These PCRA petitions were denied as untimely.  ECF Nos. 28-11 at 1, 28-12 at 1, 28-14 at 5, and 28-15 at 1.  As will be discussed in more detail below, neither of these later PCRA petitions toll the AEDPA's statute of limitations.

The Pennsylvania Post Conviction Relief Act provides, in pertinent part:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented.

42 Pa. C.S.A. § 9545(b)(1)-(2).[7]   The Pennsylvania courts adamantly have held that the above timing provisions are jurisdictional in nature, and must be construed strictly. See, e.g., Com. v. Abu-Jamal, 941 A.2d 1263, 1267-68 (Pa. 2008) (citing cases). As such, a PCRA trial court is barred even from considering a petition that is not filed within one year of the date that the conviction it is attacking became final (in Petitioner's case, one year from October 11, 2016), unless that petition falls into one of the three exceptions enumerated in the statute and was filed within one year of the date that the claim first could have been presented. Id. at 1267-68. See also Com. v. Fears, 250 A.3d 1180, 1189 (Pa. 2021), reconsideration denied (July 8, 2021).

In this case, the PCRA trial court found that Petitioner's second and third PCRA petitions were untimely, and did not fall into one of the enumerated exceptions. Accordingly, they were denied on that basis, and Petitioner did not appeal.

State court petitions for collateral review do not toll the AEDPA's one-year statute of limitations if they contain defects that implicate that petition's "'condition[s] to filing,' which go to the application for post-conviction review[.]" Satterfield v. Johnson, 434 F.3d 185, 191 (3d Cir. 2006) (quoting Artuz v. Bennett, 531 U.S. 4, 10 (2000)). Failure to satisfy such conditions "prevents a petition from being 'properly filed,' which in turn prevents application of AEDPA's

---

[7] The one year period of time set forth in subsection (b)(2) applies to claims arising on December 24, 2017 or after. Claims arising prior to December 24, 2017 had to be filed within 60 days of the date the claim could have been presented. 2018 Pa. Legis. Serv. Act 2018-146 (S.B. 915).

tolling provision." <u>Satterfield</u>, 434 F.3d at 191.  "Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself."  <u>Id.</u> (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414-15 (2005)).  These requirements prevent tolling because they "'go to the very initiation of a petition and a court's ability to consider that petition. . . .'"  <u>Satterfield</u>, 434 F.3d at 192 (quoting <u>Pace</u>, 544 U.S. at 417).

Applying this standard to Petitioner's second and third PCRA petitions, it is clear that the state courts lacked jurisdiction to address them because they were untimely.  Thus, no filing on the record after the first PCRA petition was "properly filed" under the meaning of Section 2244(d)(2), and the AEDPA's statute of limitations was not tolled during their pendency.

In total, the AEDPA's statute of limitations clock ran on all grounds from October 11, 2016 – the date on which Petitioner's conviction became final – until June 28, 2017 – the date on which Petitioner filed his first PCRA petition.  This is a period of 260 days.

The statute of limitations began to run again on November 13, 2017 – the date on which his right to appeal from the denial of the first PCRA petition lapsed – and continued until the effective filing of the Initial Petition on May 22, 2023.  This is an additional 2016 days.

This is far greater than one year.  In order for these grounds for relief to have been timely asserted, the Petition would have to have been filed by February 26, 2018.  It was not.  Accordingly, all grounds for relief in the Second Amended Petition are untimely based on the one-year period of limitation set forth in Section 2244(d)(1).

**C.     Equitable Tolling does not Save Petitioner's Claims.**

In <u>Holland v. Florida</u>, 560 U.S. 631 (2010), the United States Supreme Court affirmed the availability of equitable tolling of the AEDPA's one year statute of limitations under appropriate

circumstances. In its opinion, the Supreme Court first underscored that the one-year statute of limitations in the AEDPA was not jurisdictional, and "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Id. at 645 (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)). Given that habeas corpus is, at its heart, an equitable form of relief, and with no well-defined congressional intent to the contrary, the Supreme Court concluded that it is proper, under the principles of equity, to toll the statutory one year period for filing a petition under Section 2254 in certain cases. Holland, 560 U.S. at 646-47.

In order for a delay in filing a habeas petition to qualify for equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace, 544 U.S. at 418). "Mere excusable neglect is not sufficient." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 619 (3d Cir. 1998). Additionally, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (citing cases).

While Holland did not involve an appeal from a decision of a court within the Third Circuit, it affirmed the practice of courts within this circuit of granting equitable tolling in cases where the above-mentioned conditions had been met. See, e.g., LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005). Importantly, the United States Court of Appeals for the Third Circuit has emphasized that "[e]quitable tolling is appropriate when 'the principles of equity would make the rigid application of a limitation period unfair[.]'" Id. at 275 (quoting Miller, 145 F.3d at 618). Additionally, it should be applied only where it is "demanded by sound legal principles as well as the interests of justice." Id. (internal quotes and citations omitted).

13

In his Brief, Petitioner argues that he was unable to file a direct appeal because he was informed by trial counsel that he was precluded from doing so by his guilty plea. ECF No. 30 at 1. See also ECF No. 26 at 9. Petitioner also generally indicates ignorance of the law. ECF No. 26 at 9. None of this supports the conclusion that Petitioner faced extraordinary circumstances, or was diligent in bringing his claims. Even if this Court were to credit Petitioner's assertion regarding his direct appeal, and toll the period of time from the date that his conviction became final until the filing of his first PCRA petition, 2016 days would remain during which the AEDPA's unforgiving statute of limitations was running as to all of Petitioner's claims. As this is well more than a year, the Second Amended Petition remains untimely.

### D.    Petitioner has not Demonstrated Actual Innocence.

The statute of limitations also may be tolled if a petitioner establishes that he is actually innocent of the charges of which he has been convicted.[8] McQuiggan v. Perkins, 569 U.S. 383, 398-99 (2013) (recognizing an actual innocence exception to the AEDPA's statute of limitations). An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

The Supreme Court cautions "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

---

[8] Respondents do not address the possibility of tolling the statute of limitations based on actual innocence in their Renewed Motion. However, this Court may consider the issue *sua sponte* pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

a reasonable doubt.'" <u>McQuiggan</u>, 569 U.S. at 386 (quoting <u>Schlup v. Delo</u>, 513 U.S. 290, 329 (1995)). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" <u>Id.</u> at 401 (quoting <u>Schlup</u>, 513 U.S. at 316). "'[T]he timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." <u>Id.</u> at 386-87 (quoting <u>Schlup</u>, 513 U.S. at 332).

Petitioner bears the burden "to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>House v. Bell</u>, 547 U.S. 518, 538 (2006).

Here, it is at least arguable that Petitioner is attempting to raise a claim of actual innocence. To the extent that he does so, he appears to rely on an alleged lack of DNA and the allegedly "negative" results of a "rape kit" exam performed on the victim, ECF No. 26 at 3 and 10; ECF No. 28-8 at 3, as well as on witness testimony that allegedly was not explored by his trial counsel. ECF No. 20 at 6-7; ECF No. 30 at 1-2; ECF No. 28-8 at 4. But any assertion of actual innocence fails at the very least because Petitioner has failed to establish that any of the evidence is "new."

First, as to the rape kit and the DNA, Petitioner has not established that any lack of DNA or rape kit test results are new. Indeed, with respect to the rape kit, the PCRA trial court recognized that:

> Petitioner fails to state, much less demonstrate, that the results of the rape kit were unknown to him until the filing of this PCRA petition. In fact, Petitioner's statement that his trial counsel failed to point out the results of the tests indicates the opposite, which is that this is not a new fact as to satisfy the timeliness exception.

ECF No. 28-11 at 3-4.

Similarly, with respect to potential witnesses, based on Petitioner's own admissions, he was aware of their existence and the testimony that they allegedly would have provided prior to pleading guilty.  ECF No. 30 at 1-3.

Accordingly, the record indicates that Petitioner was aware of the evidence on which he relies at the time that he pleaded guilty.  Therefore, it is not new, and does not provide a basis to toll the statute of limitations.  Shoulders v. Eckard, No. 14-1753, 2016 WL 1237798, at *4 (W.D. Pa. Feb. 29, 2016), report and recommendation adopted, 2016 WL 1213627 (W.D. Pa. Mar. 29, 2016) ("Because the evidence was concededly available at the time of the trial, it cannot constitute "new" evidence of actual innocence.").  See also Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010) (explaining that, except in instances where trial counsel was constitutionally ineffective, "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.")

It also is noteworthy that Petitioner has failed to submit to this Court any of the evidence upon which he would rely for his factual innocence.  He did not submit any forensics reports or signed statements, from which this Court could conclude that the asserted evidence actually exists, or is favorable to Petitioner's case.  For this additional reason, Petitioner has failed to meet his burden to show that the actual innocence exception to the AEDPA's statute of limitations applies here.

Accordingly, all grounds for relief asserted in the Petition are untimely.  Therefore the Renewed Motion will be granted, and the Second Amended Petition will be dismissed.

### E.      A Certificate of Appealability will be Denied.

Finally, a certificate of appealability will be denied because jurists of reason would not find it debatable whether the Second Amended Petition was barred by the AEDPA's one-year statute

of limitations, or that he had established his actual innocence or entitlement to equitable tolling.

See, e.g., Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

**III.    CONCLUSION**

For the foregoing reasons, Respondents' Motion to Dismiss Petition for Writ of Habeas

Corpus, ECF No. 28, will be granted.  Petitioner's Second Amended Petition will be dismissed.  A

certificate of appealability will be denied.

An appropriate Order follows.

Dated: August 5, 2024                                   BY THE COURT:

                                                                                    MAUREEN P. KELLY
                                                                                    UNITED STATES MAGISTRATE JUDGE

cc:      DENZEL JOHNSON, SR.
         MS-7487
         SCI HUNTINGDON
         1100 Pike Street
         Huntingdon, PA 16652


         All counsel of record (*via* CM/ECF)